UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> ) <br> NYLON CORPORATION OF AMERICA, INC., ) <br> ) <br> Defendant. ) | Case No. 1:22-cv-00111-LM |

## <u>CONSENT DECREE</u>

WHEREAS, Plaintiff Conservation Law Foundation ("CLF" or "Plaintiff") filed this action on April 4, 2022 against Nylon Corporation of America, Inc. ("NYCOA" or "Defendant") alleging violations of the Clean Water Act, <u>33 U.S.C. §§ 1251</u> *et seq.* ("Clean Water Act" or "Act"), and seeking declaratory and injunctive relief, civil penalties, and attorney fees and costs;

WHEREAS, CLF is a non-profit environmental organization incorporated in Massachusetts;

WHEREAS, NYCOA operates a nylon production facility in New Hampshire and located at 333 Sundial Avenue, Manchester (the "Facility");

WHEREAS, CLF alleges in its complaint dated April 4, 2022 (the "Complaint") that NYCOA violated the 2008 and 2019 NPDES individual permit No. NH000116, the 2015 and 2021 Multi-Sector General Permits for Stormwater Discharges Associated with Industrial Activity, Section 301(a) of the Clean Water Act, <u>33 U.S.C. § 1311(a)</u>, and applicable regulations;

WHEREAS, NYCOA does not admit any of the facts, violations or liability alleged in the Complaint;

1

WHEREAS, Plaintiff and Defendant (collectively the "Parties") agree that resolution of the above-captioned action (the "Action") without further litigation is in the best interest of the Parties;

WHEREAS, the Parties consent to the entry of this Consent Decree without further trial, argument, or appeal;

WHEREAS, pursuant to 33 U.S.C. § 1365(c), this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") for the forty-five (45) day review period mandated by the Clean Water Act;

NOW, THEREFORE, before the taking of any testimony, without the trial of any issue of fact or law, without the admission by NYCOA of any of the facts or violations alleged in the Complaint, and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action, the subject matter herein, and over the Parties consenting hereto, pursuant to 33 U.S.C. § 1365(a)(1) (Clean Water Act jurisdiction) and 28 U.S.C. § 1331 (federal question). An actual, justiciable controversy exists between the Parties. The requested relief is authorized under 28 U.S.C. §§ 2201-2202 and 33 U.S.C. § 1365(c)(1).

2. Venue is proper in the United States District Court for the District of New Hampshire pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the sources of the violations alleged in the Complaint are located within this judicial district.

3. CLF gave NYCOA notice by letter (the "Notice Letter") of the violations alleged

in the Complaint more than 60 days prior to the commencement of this lawsuit. Copies of the Notice Letter were also mailed to the Administrator of the EPA, the Acting Regional Administrator of EPA Region 1, and New Hampshire Department of Environmental Services ("NH DES"). Neither EPA nor NH DES commenced any action prior to CLF's filing of the Complaint.

4.      NYCOA consents to this Court's jurisdiction and to venue in this judicial district. NYCOA consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

5.      This Court shall retain jurisdiction over this case until the Termination Date for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XI (Enforcement) and XIV (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## II.      RELEASE

6.      This Consent Decree is a full and complete settlement and release of all the claims in the Complaint, the Notice Letter, and all other claims known or unknown existing as of the date of entry of the Consent Decree and arising out of or relating to the operation of the Facility that were or could have been asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387 from the beginning of time to the date of Entry of the Consent Decree. Upon entry of this Consent Decree, these claims are released and dismissed with prejudice.

7.      During the term of this Consent Decree, enforcement of this Consent Decree is CLF's exclusive remedy for any violation of its terms, including those terms requiring that NYCOA comply with the 2019 National Pollutant Discharge Elimination System Wastewater Permit (NH0000116), including any amendments thereto or renewals thereof (the "Cooling

Water Permit"), and the 2021 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (NHR053159) (the "Stormwater Permit"), and applicable Clean Water Act regulations, and State Water Quality Standards. During the term of this Consent Decree, CLF covenants not to sue and shall not initiate any legal action, proceeding, or claim against NYCOA for any matter relating to its industrial or stormwater discharges, including the Cooling Water Permit, the Stormwater Permit, applicable Clean Water Act regulations, and State Water Quality Standards.

8.      Neither this Consent Decree, nor terms thereof, nor performance of the terms thereunder by NYCOA shall constitute or be construed as an admission or acknowledgement by NYCOA (1) of the factual or legal assertions contained in this Consent Decree or in CLF's Complaint, which assertions are expressly denied; (2) of any liability, or an admission of violation of any law, by NYCOA or by its officers, directors, employees, agents, successors, or assigns, which assertions are expressly denied; or (3) that NYCOA's discharges of non-contact cooling water or stormwater caused harm to the Merrimack River, the natural environment, or CLF's members, which assertions are expressly denied. This Consent Decree shall not be admissible as evidence in any proceeding other than a proceeding to enforce its terms.

### III.      APPLICABILITY

9.      Commencing on the Effective Date and ending on the Termination Date, the obligations of this Consent Decree shall apply to, and be binding upon, the Parties and their respective successors and assigns.

10.      The duties and obligations under this Consent Decree shall not be modified, diminished, terminated, or otherwise altered by the transfer of any legal or equitable interest in the Facility or any part thereof.

11.     In any action to enforce this Consent Decree, NYCOA shall not raise as a defense the failure of any of its officers, directors, employees, or agents to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.     DEFINITIONS

12.     Terms used in this Consent Decree that are defined in the Clean Water Act, in regulations promulgated by EPA pursuant to the Act, in the Cooling Water Permit, or in the Stormwater Permit shall have the meanings assigned to them in the Act, such regulations, the Cooling Water Permit, or in the Stormwater Permit, unless otherwise provided in this Consent Decree. All references to a duration of "days" shall be calendar days unless otherwise specified. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "AIM Triggering Events": Events which trigger the Additional Implementation Measure ("AIM") requirements as defined in Section 5.2.2 of the Stormwater Permit.

b.      "Annual Report": The Annual Report to EPA required under Section 7.4 of the Stormwater Permit.

c.      "Deadlines for Corrective Actions": Those deadlines for corrective actions set forth in Section 5.1.3 of the Stormwater Permit.

d.      "Discharge Monitoring Report": The quarterly stormwater monitoring report required pursuant to Sections 4.1.9, 7.1, and 7.3 of the Stormwater Permit, and the monthly monitoring report required pursuant to Section I.D. of the Cooling Water Permit Fact Sheet.

e.      "Effective Date": The date upon which this Consent Decree is entered by the

Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's Docket.

f.   "Implementing Organization": The third-party entity implementing the Supplemental Environmental Project described in Exhibit A of this Consent Decree.

g.   "Supplemental Environmental Project": A project consisting of water quality improvement measures and/or educational programs with the goal of promoting restoration, preservation, protection, or other beneficial impacts on water quality in the watersheds near the Facility. This project will be implemented by the Implementing Organization pursuant to the terms provided in Exhibit A.

h.   "Termination Date": The date on which the Consent Decree term ends, which is five years after the Effective Date pursuant to Section XIII (Effective Date and Termination).

i.   "Water Quality Standards": The standards established pursuant to 33 U.S.C. § 1313 and listed at N.H. Code Admin. R. Env-Wq §§ 1700.00, *et seq.*

## V.   COMPLIANCE MEASURES

13.   During the term of this Consent Decree, NYCOA shall comply with the operative version of the Cooling Water Permit and the Stormwater Permit. The Parties recognize that NYCOA has applied to amend or renew the Cooling Water Permit with revisions that would increase the temperature limit and account for the pH of the intake river water. The Parties further recognize that NYCOA is seeking an exception to the Additional Implementation Measure ("AIM") requirements of the Stormwater Permit pursuant to Section 5.2.6.5. If NYCOA's Section 5.2.6.5 AIM exception is approved, NYCOA's zinc monitoring and reporting

obligations under the Stormwater Permit, and related stipulated penalties set forth in Paragraph 22, shall no longer be in force and effect. NYCOA shall comply with the Clean Water Act, applicable Clean Water Act regulations, and State Water Quality Standards.

### VI.   COMPLIANCE MONITORING AND REPORTING

14. NYCOA shall comply with all inspection, monitoring, and reporting requirements set forth in the Cooling Water Permit and Stormwater Permit, as set forth in Paragraph 13 above, and applicable Clean Water Act regulations.

15. During the term of the Consent Decree, NYCOA shall submit to CLF its Discharge Monitoring Reports ("DMRs") for the Cooling Water Permit and Stormwater Permit, and any associated correspondence, no later than seven (7) days following the date by which the DMRs must be submitted to EPA, as set forth on each DMR.

16. NYCOA shall submit its Annual Reports to CLF no later than seven (7) days following the date by which the Annual Report must be submitted to EPA.

### VII.   PAYMENTS

17. NYCOA shall pay a total of $375,000 to CLF as follows:

    a. First Payment Installment: $125,000 to be paid on or before fourteen (14) days following the Effective Date;

    b. Second Payment Installment: $125,000 to be paid on or before nine (9) months following the Effective Date;

    c. Third Payment Installment: $125,000 to be paid on or before eighteen (18) months following the Effective Date.

18. CLF will allocate the payments from NYCOA as follows:

    a. $150,000 for CLF's attorneys' fees and costs of litigation, consistent with

<u>33 U.S.C. § 1365(d)</u>; and

b. $225,000 to fund the Supplemental Environmental Project pursuant to the terms provided in Exhibit A. CLF shall make this payment to the Implementing Organization within twenty-one (21) days after receiving each payment from NYCOA.

19. Exhibit A states that the Implementing Organization will submit to the Parties, pursuant to the notice provision in Section XII (Notices), annual status reports due each year on the anniversary of the payment deadline in Paragraph 18b while funds are being spent. Exhibit A further states that the status reports will include, at a minimum, the following information: (i) description of activities completed to date and related expenditures of project funds, and (ii) a discussion of any anticipated changes to the scope or timeline of the Supplemental Environmental Project.

### VIII.   STIPULATED PAYMENTS

20. The accrual, payment, and dispute of stipulated payments shall be governed by Paragraphs 21-27, and the procedures set forth below in Section XI (Enforcement).

21. During the term of the Consent Decree, Stipulated Payments made by NYCOA pursuant to this Consent Decree shall not exceed $50,000 per calendar year. The $50,000 maximum stipulated payment per calendar year includes the sum of all stipulated payments relating to Compliance Measures, Compliance Monitoring, and late fees, as described in Paragraphs 22 – 27, below.

22. NYCOA shall be subject to Stipulated Payments as set forth below, and not otherwise:

a. Exceedance of the Cooling Water Permit's effluent limitation for temperature:

$1,000 per exceedance, with a maximum payment of $10,000 per year;

b.     Exceedance of the Cooling Water Permit's effluent limitation for pH: $1,000 per exceedance, with a maximum payment of $10,000 per year;

c.     Exceedance of the Stormwater Permit's zinc benchmark in two consecutive quarterly sampling reports (and each subsequent quarter until a zinc sampling report demonstrates compliance with the benchmark): $1,000 per exceedance.

d.     Failure to meet Deadlines for Corrective Actions triggered under the Stormwater Permit: $2,500 per missed deadline;

e.     Failure to timely comply with monthly and quarterly monitoring requirements as set forth in the Cooling Water Permit and Stormwater Permit: $1,000 per failure to timely monitor per outfall;

f.     Failure to submit monthly and quarterly DMRs on or before the due date as set forth in the relevant DMR: $2,500 per failure to timely submit;

g.     Failure to timely provide CLF with monthly and quarterly DMRs or Annual Reports: $500 per missed deadline.

23.     NYCOA shall pay $500 per week for any payments made pursuant to this Consent Decree that are more than forty-five (45) calendar days late. Late fees for the late payment of the First Payment Installment shall, if any, be paid to CLF. All other late fees shall be paid to the Implementing Organization.

24.     All stipulated payments shall be paid to the Implementing Organization within thirty (30) days of each missed deadline, or within thirty (30) days of each missed submission to EPA and CLF of a DMR or Annual Report (whichever is submitted first), or within thirty (30)

9

days of a submission of a DMR or Annual Report (whichever is submitted first) that reports an exceedance that triggers a stipulated payment.

25.     After one year of compliance with the Cooling Water Permit's temperature limits, the Stormwater Permit's zinc benchmarks, and the Stormwater Permit's quarterly monitoring and reporting requirements, stipulated payments will be of no further force or effect and no longer accrue for: 1) the exceedance of the Cooling Water Permit's effluent limitation for temperature, 2) the exceedance of the Stormwater Permit's zinc benchmark; or 3) the failure to timely comply with quarterly monitoring and reporting requirements set forth in the Stormwater Permit.

26.     After six (6) months of compliance with the Cooling Water Permit's pH limits, and the Cooling Water Permit's monthly monitoring and reporting requirements, stipulated payments will be of no further force or effect and no longer accrue for: 1) the exceedance of the Cooling Water Permit's effluent limitation for pH, or 2) the failure to timely comply with monthly monitoring and reporting requirements set forth in the Cooling Water Permit.

27.     "Compliance" in Paragraphs 25 and 26 refers to the requirements set forth in the Stormwater Permit or the operative Cooling Water Permit, as amended or renewed, at the time each sample is collected.

## IX.     PUBLICITY

28.     Any public statement made by NYCOA that refers to NYCOA's payments under Section VII (Payments), shall include the following language or language materially similar to the following: "Purchases were made pursuant to the settlement of a Clean Water Act Lawsuit brought by Conservation Law Foundation" or "Payments to the organization were made pursuant to the settlement of a Clean Water Act lawsuit brought by Conservation Law Foundation." However, no such language shall be required for any NYCOA public statement responding to a

public statement made by CLF concerning payments made under Section VII.

29.     Each Party shall be offered a reasonable opportunity to review any press release issued by a Party and related to the lawsuit prior to its release.

## X.     FORCE MAJEURE

30.     "Force Majeure," for purposes of the Consent Decree, is defined as any event arising from causes beyond the control of NYCOA, of any entity controlled by NYCOA, or of NYCOA's contractors that delays or prevents the performance of any obligation under the Consent Decree despite NYCOA's best efforts to fulfill the obligation. Force Majeure events shall include, but not be limited to, war or violent uprisings, natural disasters, labor strikes, transport delays, civil unrest, a declared state of emergency, and any public health concerns. The requirement that NYCOA exercise best efforts to fulfill the obligation includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay or non-performance during such event to the greatest extent possible. Force Majeure does not include NYCOA's financial inability to perform any obligation under this Consent Decree. Unanticipated or increased costs or expenses associated with the performance of NYCOA's obligations under this Consent Decree shall not constitute circumstances beyond NYCOA's control, nor serve as the basis for an extension of time under this Section and shall not constitute an event of Force Majeure.

31.     If any event occurs or has occurred that may delay or prevent compliance with the performance of any obligation under this Consent Decree, as to which NYCOA intends to assert a claim as an event of Force Majeure, NYCOA shall provide written notice to CLF of such claim in accordance with Section XII (Notices), as soon as practicable but no later than thirty (30) days

11

following the date NYCOA first had notice that the claimed Force Majeure event may cause

such delay or impediment and give rise to a claim of Force Majeure. Upon providing notice of

Force Majeure, NYCOA's time for performance of the obligations under this Consent Decree

that are affected by the Force Majeure will be extended as necessary to complete those

obligations, or the obligations will be eliminated if performance is no longer possible.

## XI.    ENFORCEMENT

32.    The Court shall retain jurisdiction over this case until the termination of the

Consent Decree to enforce the terms and conditions of the Consent Decree, to modify the

Consent Decree, and to resolve any disputes arising hereunder.

33.    In the event NYCOA fails to comply with any provision of the Consent Decree,

CLF may seek to enforce the Consent Decree by motion in this case.

## XII.    NOTICES

34.    Unless otherwise provided herein, whenever notifications, submissions, or

communications are required by the Consent Decree, they shall be made in writing and

addressed as follows:

For CLF:
Clean Air and Water Paralegal
Ruby Verbitsky
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
rverbitsky@clf.org

For NYCOA
Attn: Jay Bizarro
Email: jbizarro@nycoa.com

With a copy to

Attn: Dennis Toft, Esq.
Email: dtoft@csglaw.com

12

35.     Any Party may, by written notice to the other Party, change its designated notice recipient or email address.

36.     All notifications, communications, or submissions made pursuant to this Section shall be sent by email. Any Party planning a communication by other means should first attempt to contact the opposing Party by email or telephone to confirm the appropriate mailing address.

## XIII.   EFFECTIVE DATE AND TERMINATION

37.     Following expiration of the 45-day review period provided by 33 U.S.C. § 1365(c)(3), the Plaintiff will move the Court for entry of this Consent Decree.

38.     If the Court declines to approve this Consent Decree in the form presented, the Parties agree to continue negotiations to cure any objection to entry of this Consent Decree raised by the Court.

39.     All obligations arising under the Consent Decree shall become effective as of the Effective Date.

40.     The Consent Decree shall terminate five years after the Effective Date on the Termination Date.

## XIV.   MODIFICATION

41.     The terms of the Consent Decree may be modified only by a subsequent written agreement signed by the Parties and the approval of the Court.

## XV.    SIGNATORIES/COUNTERPARTS

42.    Each undersigned representative of the Parties certifies that they are fully authorized to enter into the terms and conditions of the Consent Decree and to execute and legally bind the Party they represent to this document.

43.    Electronic and scanned signatures shall be deemed originals for all purposes. Copies of the Consent Decree, whether transmitted electronically or otherwise, shall be effective. This Consent Decree may be signed by the Parties in counterparts.

## XVI.   SEVERABILITY

44.    The provisions of this Consent Decree shall be severable, and should any provision hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the Parties.

## XVII.  INTEGRATION

45.    The Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## XVIII. FINAL JUDGMENT

46.    Upon approval and entry of the Consent Decree by the Court, the Consent Decree shall constitute a final judgment of the Court as to the Plaintiff and the Defendant.

# SIGNATURE PAGE

**Conservation Law Foundation, Inc.**

By: _____    Date: July 12, 2023

Heather A. Govern
Conservation Law Foundation
62 Summer Street
Boston, MA 02110

**Nylon Corporation of America, Inc.**

By: _____    Date: July 12, 2023

Jay Bizarro
President & CEO
Nylon Corporation of America
333 Sundial Avenue
Manchester, NH 03103

Dated and entered this ___29th___ Day of __August__ , ___2023___.

_____
United States District Court Judge
Landya B. McCafferty

## EXHIBIT A: SUPPLEMENTAL ENVIRONMENTAL PROJECT DESCRIPTION

**I.     WATER QUALITY IMPROVEMENT IN LOWER MCQUESTEN BROOK**

1.      Implementing Organization: New Hampshire Rivers Council

2.      Project Funds: $225,000

3.      Description: This Mitigation Project will include the following components:

a.      Completion of a technical study to identify sediment inputs along McQuesten Brook (a stream of conservation focus by the New Hampshire Rivers Council, State of New Hampshire, and City of Manchester). The investigation will identify sources of sediment in the watershed and processes and pathways by which the sediment is delivered to McQuesten Brook and deposited in and around the Second Street culvert.

b.      Using the results from the study, the New Hampshire Rivers Council will work with an environmental consultant to develop a conceptual model of sediment delivery and transport in the watershed, and to prepare a report summarizing the methods, findings, and recommendations emerging from the study.

c.      With any remaining funds, the New Hampshire Rivers Council will design and implement sediment input mitigation projects at priority sites within the McQuesten Brook watershed.

4.      Projected Water Quality Benefits: The project will improve water quality in McQuesten Brook by reducing the sediment load, which is currently in excess of the stream's capacity. This will in turn benefit aquatic species in the watershed, including Eastern Brook Trout. By addressing the systemic issue of excessive sediment delivery to McQuesten Brook, the project will also reduce the recurring expenses and environmental

impacts associated with flooding due to the plugging of the Second Street culvert and the periodic dredging sediment from the channel.

5.      Annual Reports: New Hampshire Rivers Council will submit annual status reports to the Conservation Law Foundation and Nylon Corporation of America Inc. The reports will include, at a minimum, a description of activities completed to date and related expenditures of project funds and a discussion of any anticipated changes to the scope or timeline of the project. Status reports will be on the anniversary of the initial receipt of funds every year while funds are being spent. Reports will be emailed to Ruby Verbitsky (rverbitsky@clf.org) and Jay Bizarro (jbizarro@nycoa.com).